**FILED**

MAR 1 4 2016

CAROLINE M. WEAVER
DELAWARE CO. COURT CLERK

## IN THE DISTRICT COURT OF DELAWARE COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| 1. | **JAMIE VICE,** | ) |
| | **Plaintiff,** | ) |
| | | ) |
| v. | | ) |
| | | ) |
| 1. | **OKLAHOMA DEPARTMENT OF HUMAN** | ) |
| | **SERVICES; and** | ) |
| | | ) |
| 2. | **JOHN DOES 1-30, unknown individuals** | ) |
| | **Employed by OKLAHOMA DEPARTMENT** | ) |
| | **OF HUMAN SERVICES,** | ) |
| | | ) |
| | **Defendants.** | ) |

CASE NO.: CJ-16-43

JUDGE: Haney

) **ATTORNEY LIEN CLAIMED**
) **JURY TRIAL DEMANDED**

### PETITION

**COMES NOW** the Plaintiff, Jamie Vice ("Plaintiff"), and submits her causes of action against Defendant Oklahoma Department of Human Services ("OKDHS") and John Does 1-30.

1.     The Plaintiff is a resident of Delaware County, State of Oklahoma.

2.     At all times relevant, the Defendant Oklahoma Department of Human Services ("OKDHS") is an Oklahoma "department" falling within the definition of "state" for purposes of the Governmental Tort Claims Act, 51 O.S. §§151 *et. seq.* ("GTCA"). The Plaintiff represents to this Court that she complied with the Notice provisions of the GTCA, in that she provided the State of Oklahoma timely notice of her claims and such was denied by operation of law. [*See, e.g.,* **Exhibit 1**].

3.     Upon information and belief, at all times relevant the Defendant John Does 1-30 are employees, agents, and representatives of OKDHS ("DHS Defendants"). These persons include, without limitation, Martha Sue Thompson.

1

EXHIBIT 2

4.     The incidents giving rise to this action occurred in part in Delaware County, Oklahoma.

5.     Personal jurisdiction is proper pursuant to 12 O.S. § 2004(f) and venue is properly laid pursuant to 12 O.S. §§131-133.

### FACTS PERTINENT TO ALL CLAIMS

6.     The Plaintiff commenced her first period of employment with OKDHS in 2005 as a temporary worker, with such ending in August 2010. This period was uneventful as far as disciplinary action, and in fact she was continuously praised for the work she performed. She was also appointed the OKDHS "Office Ambassador", which is accepted as the "face" of the OKDHS office, a position she held for five (5) years.

7.     During this first period of employment at OKDHS, the Plaintiff was the target of sexually harassing and abusive comments from a male OKDHS employee, Abe Helfenstine ("Helfenstine").

8.     Helfenstine was known throughout the OKDHS office as someone that repeatedly made sexually charged comments to female customers visiting the office and to other OKDHS female employees. To one such employee, Kim Carter, Helfenstine suggested she was engaging in sexual activity with OKDHS clients.

9.     Helfenstine boasted to the Plaintiff and other OKDHS workers about making sexually charged and verbally abusive comments about and towards the Plaintiff and others. The Plaintiff complained to OKDHS supervisors about Helfenstine's conduct.

10.     In April of 2014, the Plaintiff commenced her second period of employment with OKDHS in its Delaware County Child Support Office in Jay, Oklahoma as a temporary Administrative Assistant.

EXHIBIT 2

11.     Within hours of this period of employment, Helfenstine renewed/continued his sexual harassment and crude sexual statements towards the Plaintiff.

12.     During this period, Helfenstine told the Plaintiff on numerous occasions how happy he was to have something to "look at" while on the job, and made vulgar comments about her appearance and dress. He even boasted that he and his adult children would refer to her as a "MILF" (Mother/Mom I'd Like to Fuck").

13.     The Plaintiff's coworkers at OKDHS overheard Helfenstine's boorish and vulgar comments directed to the Plaintiff.

14.     In October 2014, while the Plaintiff was outdoors on break at another employer, Helfenstine yelled from his state vehicle to her: "Hey, how much?" as if she was a prostitute. The Plaintiff informed OKDHS Staff Attorney Susa Hopper about this event as no supervisory-level employee was present.

15.     Ms. Hopper informed the Plaintiff she confronted Helfenstine about the event discussed in Paragraph 14, to which he initially denied took place. Helfenstine later admitted to Ms. Hopper he did yell that at the Plaintiff, and furthermore boasted to the Plaintiff's OKDHS coworkers about shouting at her.

16.     Helfenstine routinely made sexually harassing and demeaning statements to the Plaintiff, including without limitation: telling her in the presence of her OKDHS coworkers to the effect that she's "not near as bad as the things" he said about her; making crude gesturing to his genital area while discussing being shaved before a medical procedure; singing sexually explicit song lyrics ("major tongue to birth control") in the work place; shouting "shake it, shake it" at the Plaintiff while she walked outdoors, and loudly commenting about another OKDHS's

3

EXHIBIT 2

employee's penis size. Helfenstine made these sorts of comments after he boasted of just completing sexual harassment training.

17.     The Plaintiff informed an OKDHS supervisor, Jammie Sartin ("Ms. Sartin"), about the incident with Helfenstine yelling at the Plaintiff from his vehicle. The Plaintiff witnessed Ms. Sartin going directly to and reporting the same to OKDHS managing attorney Martha Sue Thompson ("Thompson"). On another occasion, the Plaintiff had reported to Thompson that Helfenstine was having inappropriate, sexually-charged conversations with an OKDHS client, whereupon Thompson told the Plaintiff "at least [Helfenstine] is leaving us alone." Thompson did nothing in response to the Plaintiff's complaints.

18.     Thompson retaliated against the Plaintiff subsequent to her reporting being abused and harassed by Helfenstine, in particular when the Plaintiff applied for a full time position with OKDHS. In December 2014, the Plaintiff applied for an open Child Support Specialist position in the Jay Office, a position which she was more than qualified for. The Plaintiff was selected by the reviewing three person panel comprised of OKDHS employees.

19.     Thompson overruled the panel and gave the position the Plaintiff applied for and was approved of to a far lesser qualified and inexperienced applicant. Thompson even refused to accept a reference letter from one of the Plaintiff's previous employers even after Thompson had requested one.

20.     After being denied the aforementioned job position, the Plaintiff was appointed "Office Ambassador" by OKDHS supervisor Lori Lovell, after Lovell had been instructed by Thompson to just appoint someone. This was the same position the Plaintiff occupied for five years during her first period of employment. Thompson disapproved of the Plaintiff having this position and weeks later rescinded that appointment.

4

EXHIBIT 2

21.     Over the course of the Plaintiff's numerous years of employment at OKDHS, she has been repeatedly subjected to the worst forms of abuse, verbal harassment, and fear-inducing taunts by Helfenstine with no relief from OKDHS supervisors such as Thompson.

22.     The Plaintiff has sustained significant damages since the OKDHS deprived her of her promotion, and other positions which would have yielded promotion. Her damages include financial loss, embarrassment, humiliation, and attorneys' fees and litigation costs.

23.     Thompson has a documented history of completely ignoring the needs of OKDHS employees. Another OKDHS employee, Ms. Sartin, recently commenced a federal employment discrimination action based in part on Thompson's acts and omissions at OKDHS.

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### PLAINTIFF V. OKDHS

For her First Cause of Action against OKDHS, the Plaintiff adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

24.     OKDHS owed a legal duty to the Plaintiff to sufficiently and properly hire, train, supervise, monitor, and retain its employees in such a manner to not threaten, sexually harass and demean, intimidate, create fear, or otherwise impose terror on their fellow employees such as the Plaintiff.

25.     OKDHS breached these duties, and others to be discovered upon the completion of discovery, by negligently failing to sufficiently and properly hire, train, supervise, monitor, and retain its employees. Further, such failures resulted in OKDHS being unable to provide the Plaintiff a reasonably safe workplace.

5

EXHIBIT 2

26.     Independently or alternatively, OKDHS breached duties it owed the Plaintiff by negligently failing to follow proper policies and procedures, or by failing to adopt/enact the same, to protect employees such as the Plaintiff from harm inflicted by her coworkers.

27.     As a direct and proximate cause of OKDHS's breaches of its legal duties it owed her, the Plaintiff sustained significant personal injuries including fear of the future, emotional distress, and degradation/humiliation.

**WHEREFORE**, premises considered, the Plaintiff Jamie Vice prays the Court for Judgment against OKDHS, and award her actual damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, prejudgment and post judgment interest, attorney fees incurred, and any other relief deemed just and equitable.

### SECOND CAUSE OF ACTION
### VIOLATION OF OKLAHOMA'S ANTI-DISCRIMINATION ACT
### PLAINTIFF V. OKDHS--DISCRIMINATION AND RETALIATION

For her Second Cause of Action against OKDHS, the Plaintiff adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

28.     The Plaintiff was deprived of her rights under Oklahoma law, in particular 25 O.S. §§1101, *et. seq.* ("OADA"), and discriminated against by OKDHS on the basis of her gender.

29.     The acts and omissions complained of throughout was motivated in full or in part by discrimination, which is contrary to the OADA.

30.     In treating the Plaintiff differently because of her gender than other employees that did not suffer discrimination, and also retaliating against the Plaintiff by harassing her, denying her promotion and further employment positions, OKDHS did violate the OADA.

6

EXHIBIT 2

31.     The Plaintiff sustained lost wages, loss employment-provided benefits, emotional distress, mental anguish, fear of the future, humiliation, and other compensable and pecuniary damages which are recoverable under Oklahoma law.

**WHEREFORE**, premises considered, the Plaintiff Jamie Vice prays the Court for Judgment against the Defendant, and award her declaratory and injunctive relief, actual damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, prejudgment and post judgment interest, attorney fees incurred, and any other relief deemed just and equitable.

### THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF V. DHS DEFENDANTS

For her Third Cause of Action against the DHS Defendants, the Plaintiff adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

32.     The DHS Defendants' actions and conduct were intentional and reckless, and the same was of an extreme and outrageous nature. Furthermore, such actions and conduct was so extreme and outrageous as it went beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

33.     The Plaintiff suffered and experienced actual emotional distress because of the DHS Defendants' actions, and said distress was severe.

**WHEREFORE**, premises considered, the Plaintiff Jamie Vice prays the Court for Judgment against the DHS Defendants, and award her actual damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, punitive damages, prejudgment and post judgment interest, attorney fees incurred, and any other relief deemed just and equitable.

7

EXHIBIT 2

## FOURTH CAUSE OF ACTION
### TORT CLAIM (ALTERNATIVELY PLED)
### PLAINTIFFS v. DHS DEFENDANTS, INDIVIDUALLY

For her Fourth Cause of Action against the DHS Defendants in their individual capacities, the Plaintiff adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

34.    The DHS Defendants complained of conduct was with knowledge, reckless, malicious, and was otherwise of such a degree as to deprive them of any protection of the GTCA.

35.    The DHS Defendants are therefore individually liable in tort to the Plaintiff for their gross negligence, and intentional infliction of emotional distress.

36.    The Plaintiff is entitled to recover actual and punitive damages, and any other relief allowable by law against the DHS Defendants.

**WHEREFORE**, premises considered, the Plaintiff Jamie Vice prays the Court for Judgment against the DHS Defendants, and award her actual damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, punitive damages, prejudgment and post judgment interest, attorney fees incurred, and any other relief deemed just and equitable.

Respectfully submitted,

_Emol_

_____
TONY MARESHIE, OBA#18180
E. ANTHONY MARESHIE, P.L.L.C.
P.O. Box 330161
Tulsa, Oklahoma 74133-0161
tulsalegal@gmail.com
(918) 519-3771 - Telephone
(918) 970-6927 - Facsimile
**_Counsel for Plaintiff_**

ATTORNEY LIEN CLAIMED

8

EXHIBIT 2

Dan Ross
Administrator
Capital Assets Management



Preston L. Doerflinger
Director
Secretary of Finance, Administration
and Information Technology

July 6, 2015

E. Anthony Mareshie, PLLC
P.O. Box 330161
Tulsa, Oklahoma  74133-0161

Re:     RM Claim #:     1620016798
        Claimant:       JAMIE VICE

Dear Mr. Mareshie:

This letter is sent to confirm the receipt, July 03, 2015, of the claim for compensation you have tendered, asking for damages under the Governmental Tort Claims Act.  The identifying claim number is listed above.  Please use this number as a reference when calling to inquire about your claim.

Under the provisions of the Act, the State will be afforded up to 90 days from the receipt of your claim by us to review and evaluate it.  The State makes every effort to investigate and respond to claims as quickly as possible.

Please provide the following information to Risk Management on behalf of the Attorney General's Office:

- ☒ Specific incident date
- ☒ Documentation to support your claim

The information is needed to investigate your claim.  The supplemental information must be received on or before July 20, 2015, the date from which the 90 days will begin.  If neither timely submission nor satisfactory explanation is made by this date, the claim will stand denied at the end of the expiration of 90 days from the date the information is due.  The right to seek compensation by suit in District Court may be restricted by the limitations period prescribed by law of one hundred eight (180) days after the denial of the claim.

Your point of contact on this claim is Adriano Coronel.  If you have any questions he can be contacted at 405-522-0411 or Adriano.Coronel@omes.ok.gov.

Sincerely,

*Toni Blue*

Toni Blue
Operations Manager

**EXHIBIT**

**1**

EXHIBIT 2