# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMIE VICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16-CV-711-JED-FHM |
| v. | ) |
| | ) |
| OKLAHOMA DEPARTMENT OF | ) |
| HUMAN SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

**I.    Plaintiff's Allegations**

In her Second Amended Petition (Doc. 2-8), which was filed in state court prior to the removal of this action, plaintiff asserts several employment-related claims against the Oklahoma Department of Human Services (DHS). DHS moves to dismiss (Doc. 8). The facts set forth herein are alleged in the plaintiff's Second Amended Petition and are taken as true for purposes of this order.

Plaintiff was first employed as a temporary worker with DHS from 2005 to August 2010. During that time, she was the target of sexually harassing and abusive comments from a male coworker, Abe Helfenstine. According to plaintiff, Helfenstine was known throughout the DHS office for making "sexually charged comments" to female customers and coworkers. Plaintiff complained to DHS supervisors about Helfenstine's behavior.

Plaintiff was again employed by DHS beginning in April 2014, when she commenced working as a temporary administrative assistant in the DHS's Delaware County Child Support Office in Jay, Oklahoma. "Within hours of this period of employment, Helfenstine renewed/continued his sexual harassment and crude sexual statements towards the plaintiff."

Helfenstine told plaintiff that he was happy to have something to "look at," he made vulgar comments about plaintiff's appearance and dress, and referred to her as a "MILF." Plaintiff's coworkers overheard those comments. In October 2014, while plaintiff was outdoors on a break, Helfenstine yelled from his state vehicle "Hey, how much?" Plaintiff informed DHS Staff Attorney Susa Hopper about the event, as no supervisory-level employee was present. Hopper informed plaintiff that she confronted Helfenstine about his conduct, which he denied.

Helfenstine engaged in numerous other instances of demeaning conduct toward the plaintiff. For example, he crudely gestured to his genital area while discussing being shaved for a medical procedure, he sang "major tongue to birth control" lyrics, shouted "shake it, shake it" while plaintiff walked by, and he loudly commented about another DHS employee's penis size. Plaintiff informed a DHS supervisor, Jammie Sartin, about Helfenstine yelling at the plaintiff from his vehicle, and Sartin reported that incident to DHS managing attorney Martha Sue Thompson. Plaintiff also directly reported to Thompson that Helfenstine was having inappropriate, sexually-charged conversations with a DHS client, and Thompson responded that "at least [Helfenstine] is leaving us alone." Thompson did not address plaintiff's complaints.

Plaintiff applied for a full-time position with DHS as Child Support Specialist in the Jay office in December 2014, and she was qualified for that position. Plaintiff was selected by a three-person panel of DHS employees. After the selection, Thompson held a meeting and demanded that the panel members justify their selection. Thompson later informed the plaintiff that she would not be hired for the position. Thompson gave the position to a far less qualified and inexperienced applicant. Plaintiff alleges that Thompson's actions were in retaliation for plaintiff's reports of abuse and harassment by Helfenstine.

After she was denied the full-time position, another supervisor, Lori Lovell, appointed the plaintiff as "Office Ambassador." Thompson disapproved of the appointment of plaintiff and later rescinded the appointment. Over the course of plaintiff's employment at DHS, she has been repeatedly subjected to abuse, harassment, and taunts by Helfenstine, while supervisors such as Thompson have provided no relief. According to plaintiff, Thompson has a documented history of completely ignoring the needs of DHS employees. Plaintiff spoke publicly about the DHS's refusal to protect her from Helfenstine's abuse, Thompson's misuse of power, and raising matters of public concern.

Based on the foregoing factual allegations, plaintiff asserts five claims against the DHS: (1) violation of Title VII of the Civil Rights Act of 1964 by sexual harassment, gender discrimination, and hostile work environment; (2) retaliation in violation of Title VII; (3) negligence in hiring, training, and supervising employees; (4) violation of the Oklahoma Anti-Discrimination Act (OADA) by gender discrimination, harassment, and retaliation; and (5) violation of plaintiff's speech rights under the Oklahoma Constitution. The DHS moves to dismiss those claims. (Doc. 8). [1]

## II. Dismissal Standards

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether plaintiff has stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard requires

---

[1] Plaintiff has also asserted two claims – for intentional infliction of emotional distress (IIED) and gross negligence (Fifth and Seventh Claims) against unnamed, individual DHS employees, which plaintiff has identified as John Does 1-30. (*See* Doc. 2-8 at 11, 13; *see also* Doc. 12 at 22). Given that those claims are not asserted against DHS, they will not be considered at this time.

"enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted). *Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). The Court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to claimant. *See Twombly*, 550 U.S. at 555.

The dismissal standard does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded [pleading] may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

### III. Discussion

#### A. Title VII: Hostile work environment

DHS argues that plaintiff has failed to state a claim for hostile work environment under Title VII, because (1) plaintiff has not alleged facts to show that the DHS had actual or constructive knowledge of the hostile work environment and (2) the conduct of which she complains is not sufficiently severe. (Doc. 8 at 4-5). Taking plaintiff's factual allegations as true, she has set forth factual averments of frequent offensive statements and conduct by Helfenstine. She has also

alleged that she reported Helfenstine's conduct to attorneys and supervisors, and that Helfenstine's conduct was pervasive and known within the DHS office, but that the DHS took no steps to abate it. At the pleading stage, this is sufficient to state a plausible hostile work environment claim under Title VII.

B. **Title VII Retaliation**

DHS argues that plaintiff's Second Amended Petition does not state a claim for retaliation under Title VII because plaintiff has not established a "causal connection" between the alleged protected activity and adverse employment actions. However, plaintiff has averred facts from which it could be inferred that Thompson had a retaliatory motive following plaintiff's complaints about Helfenstine. DHS argues that the timeline from the plaintiff's Second Amended Petition and her charge of discrimination is unclear, such that it does not establish temporal proximity for causation / retaliatory motive purposes. However, at the pleading stage, it is sufficient that plaintiff has alleged that, within months of plaintiff's reports of Helfenstine's conduct, Thompson overruled a hiring panel that had selected plaintiff for a full-time position and rescinded a designation of "Office Ambassador," which another supervisor had assigned to plaintiff. Plaintiff has stated a plausible claim for retaliation.

C. **Negligence**

DHS argues that it is exempt from liability for plaintiff's negligence claim under the Oklahoma Governmental Tort Claims Act, 51 *Okla. Stat.* §§ 155(4), (5). Plaintiff acknowledges that DHS cannot be liable for negligent supervision, but asserts that the DHS should be liable for tortious activities of DHS employees in failing to maintain a safe working environment. The Court has reviewed the plaintiff's arguments and authorities and concludes that they do not support

5

maintenance of a negligence claim under the facts asserted in plaintiff's Second Amended Petition. That claim will be dismissed.

### D. OADA

DHS argues that plaintiff's claim under the OADA fails for the same reasons that her Title VII claims should fail. As DHS notes, "protections provided by the OADA are co-extensive with the protections provided by federal law." (Doc. 8 at 12-13). Because the Court has concluded that the Second Amended Petition states plausible claims under Title VII for hostile work environment and retaliation, the plaintiff's factual allegations likewise state a plausible claim under the OADA.

### E. Oklahoma Constitution

Plaintiff asserts that she has stated claims under the Oklahoma Constitution, for violations of her due process and free speech rights, among other rights. (Doc. 2-8 at 12). DHS moves to dismiss that claim, arguing that plaintiff has not alleged facts sufficient to state such a claim. The Court agrees. Other than generic allegations of violations of rights of "life, liberty, or property," the right to peaceably assemble, and free speech rights (*see* Doc. 2-8 at 12; Doc. 12 at 23), plaintiff's Second Amended Petition does not allege facts that support any violations of her constitutional rights. Her formulaic recitation of constitutional provisions is insufficient to state a plausible claim under the Oklahoma Constitution. *See Twombly*, 550 U.S. at 555. The plaintiff's claims under the Oklahoma Constitution (Sixth Cause of Action) are dismissed.

## IV. Conclusion

For the foregoing reasons, DHS's motion to dismiss (Doc. 8) is **granted in part and denied in part**. The plaintiff's Third Cause of Action (negligence) and Sixth Cause of Action (under the Oklahoma Constitution) are dismissed. The plaintiff's First, Second, and Fourth Causes of Action against the DHS survive.

SO ORDERED this 22nd day of September, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE